JOHANNA C. SAELI and Others, Appellants, *v.* TITLE GUARANTEE AND TRUST COMPANY, Respondent.

Supreme Court, Appellate Term, First Department, March 24, 1939.

*Richard J. Stull,* for the appellants.

*Milbank, Tweed & Hope* [*William J. Junkerman* and *John M. Friedman* of counsel], for the respondent.

FRANKENTHALER, J.   This action was brought to recover $1,000, paid to defendant by plaintiffs on or about June 15, 1932, for a participation certificate in a first mortgage.   The complaint alleges that defendant falsely represented that there were no arrears of taxes, assessments and water rates affecting the premises securing the mortgage and that on discovery of the falsity of the representations plaintiffs elected to rescind the purchase of the certificate and tendered it back to the defendant.

Plaintiffs' testimony established that the taxes for the first half of 1932, which were due on May 1, 1932, and became a lien on that day, were in fact not paid at the time plaintiffs purchased the certificate and were, therefore, about forty-six days in arrears. If plaintiffs' case rested solely upon their claim that defendant had falsely represented that the certificate constituted an interest in a first lien on the mortgaged property, the dismissal of the complaint by the trial court would have been proper on the ground that the falsity of the representation was not material, in view of the fact that the taxes were in arrears for only a comparatively short period.   (*Pedone* v. *Title Guarantee & Trust Co.,* 280 N. Y. 153; *Occhiuto* v. *Title Guarantee & Trust Co.,* 270 id. 577.)   In the *Pedone* case (*supra*) the default in taxes at the time of the sale of the certificate was for one half-yearly installment which was sixty-five days in arrears.   In reversing the judgment of the Appellate Division, Second Department, which directed a judgment in favor of plaintiff, and in affirming the dismissal of the complaint at Trial Term, the Court of Appeals said: " Upon this record it does not appear as matter of law that the defendant made any representation which was false in a material and substantial respect." In the *Occhiuto* case (*supra*) taxes had been in arrears for forty-six days at the time the plaintiff in that case purchased the certificate.   The judgment in favor of the defendant entered upon the

trial court's decision was affirmed without opinion by the Appellate Division (244 App. Div. 780) and the Court of Appeals.

The instant case is, however, considerably stronger, from the standpoint of plaintiffs, than the cases cited. It the *Pedone* case (*supra*) the alleged representation, made "directly or inferentially," was merely that the certificate constituted a participation in a first lien on the premises, while in the *Occhiuto* case (*supra*) the trial court had found that no express representation whatsoever had been made by defendant (the certificate, however, purported to be an interest in a first mortgage). In the case at bar, on the other hand, plaintiffs testified not only that defendant expressly represented that there were no unpaid taxes upon the property, but, what is more, that they expressly and specifically insisted upon purchasing a certificate on property free from any tax arrears. Thus, plaintiff Anthony Saeli testified that in view of real estate conditions which prevailed in June, 1932, " I asked her [defendant's representative] whether this money would be put into a mortgage which would be in good standing without any arrears of taxes or interest payments; * * * Q. Was the question of taxes specifically mentioned? A. I did mention it, and brought it up and discussed it with Miss Langthorne at the time. Q. Was the question of water and assessments mentioned? A. I grouped them all together, that the investment should be on a property that had no arrears either on interest payments or any taxes or water or assessments. Q. What did she say to you when you spoke about that? A. She said they would not issue or sell anything that was not free and clear and in good standing. * * * I did not mention any particular place. * * * I left it to them, except that my only request was that it should be placed on property without any arrears of taxes or assessments or water. * * * I said to her that in view of the unsettled condition of real estate before reinvesting that thousand dollars * * * I wanted * * * to make sure that it would be on a property that was in good standing and had no liens or arrears in interest payments or taxes or assessments of any kind."

The witness further testified that he would not have bought the certificate had he known taxes on the property were in default. Plaintiff Johanna C. Saeli testified that it was stated that the money would be invested in property free from tax arrears and that she was " assured to that effect; " that " the Doctor, my husband, asked Miss Langthorne if she would put the money in a safe property, which was all free and clear of any taxes or liens, on which taxes were paid up to date," and that Miss Langthorne said, " Of course, we would not put it in anything but property

like that." She further testified that she would not have bought the certificate had she known the property was in default as to taxes.

As the complaint was dismissed at the close of plaintiffs' case, the foregoing testimony stands uncontradicted and must be regarded as true for the purposes of this appeal. According to said testimony, by specifically ordering and insisting upon a certificate on property on which all taxes were fully paid, plaintiffs made freedom from tax arrears a material condition of their purchase, and defendant assented to the transaction upon plaintiffs' terms. What might otherwise have been considered immaterial thus became material by express agreement of the parties. If plaintiffs, as they claimed, impressed upon defendant that they would not take a certificate on property on which any taxes were unpaid, they had the right to rescind on discovering that defendant had delivered to them a certificate on property the taxes on which had not been paid for a month and a half after they became a lien. That plaintiffs' alleged insistence upon freedom from *any* tax arrears was not arbitrary or trivial is confirmed by the subsequent history of the property in regard to tax payments. The failure to pay the taxes which became due May 1, 1932, was followed by successive tax defaults for the second half of 1932, for both halves of 1933, and for the first half of 1934. In other words, the default which existed at the time of plaintiffs' purchase was the forerunner of four successive additional defaults. Plaintiffs might well have contemplated that a situation of that very kind would develop, reasoning that a failure to pay May first taxes by June fifteenth would be some indication that all was not well with the property to be selected by the company and that further defaults were likely to ensue.

Claim is made that in view of the fact that the taxes for the first half of the year 1932 were ultimately paid in August, 1934, by the Superintendent of Insurance, as rehabilitator of the Bond and Mortgage Guarantee Corporation, plaintiffs had no right to rescind by reason of the default. Had this payment in August, 1934, satisfied *all* tax arrears on the property securing the certificate, this contention might be a meritorious one and no rescission permitted on the basis of a representation which, though untrue when made, was no longer false. The fact is, however, that at the time of the payment in August, 1934, the taxes for the second half of 1932, for both halves of 1933, and for the first half of 1934, were also still unpaid. In other words, five half-yearly installments were in default when the Superintendent of Insurance received from the rent assignment on the property funds sufficient to pay only one of these installments. Had he used the funds, as he

had the right and power to do, to pay the taxes for any of the four installments which accrued after the first half of 1932, there would clearly be no basis for denying plaintiffs the right to rescind. The result should be no different merely because the Superintendent, in accordance with his practice, credited funds available for taxes to the installment which was longest overdue. Plaintiffs' Exhibit 4 shows that taxes for the second half of 1932 were not paid in full until August 14, 1935, a year after the payment of the taxes for the first half of 1932. *Taxes for the first half of 1933 appear from said exhibit to be partially unpaid and taxes for the second half of 1933 entirely unpaid.* The exhibit covers taxes for 1928 to 1933 only. Presumably taxes since 1933 also remain unpaid. Plaintiffs insisted, according to their testimony, upon getting a certificate on property with no arrears of taxes. Admittedly the certificate delivered to them covered property on which one installment of taxes was then unpaid. *The payment of one installment of taxes in August, 1934, did not " cure " the misrepresentation, for by that time the tax situation was much worse, five installments being in default by then. If plaintiffs did not want a certificate on which even one installment was unpaid, a fortiori they did not want one on which more than one installment was in default.* The so-called " cure," *i. e.*, the payment in August, 1934, left plaintiffs with a certificate on property much further in arrears as to taxes than it had been at the time of the representation that there were no tax arrears. Had plaintiffs received a certificate on property on which all taxes had been paid they might not subsequently have found themselves, as they do now, with a certificate on property with heavy tax arrears. The very purpose of their alleged request for a tax-free certificate was undoubtedly to minimize the possibility of that happening which actually did happen in connection with the certificate they received, namely, a steady increase in the amount of unpaid taxes. To hold that the payment of the particular installment which was overdue at the time of the purchase of the certificate " cured " the misrepresentation and extinguished plaintiffs' right to rescind, despite the fact that more taxes remained unpaid than at the time of the misrepresentation, is to exalt form over substance and to disregard the realities and the practical aspects of the situation. It leads to an illogical and unjust result.

Some point has been made of the fact that the taxes for the first half of 1932 could have been paid by the owner of the property within thirty days after May 1, 1932, *without incurring a penalty.* This is, however, immaterial in determining how many days the taxes were in arrears on June 15, 1932, when the certificate was purchased. The taxes became due and a lien on May 1, 1932.

The thirty-day " grace " period relates only to the question of when the penalty commences to accrue for non-payment of the tax.

Nor may it be assumed that the misrepresentation was innocent. Plaintiffs' testimony raises an inference that the representation, if not intentionally false, was at least made without any attempt to ascertain the truth. Certainly the title company was in a position to find out very easily whether there were any tax arrears. If it did not try to do so, it should not have made a representation that there were no arrears. If it did check the tax situation but made an honest mistake, that was for it to establish; there is no such testimony in the record. However, it is unimportant whether the misrepresentation was innocent or not, for it is well settled that even an innocent misrepresentation, if material, permits a recovery in rescission.

Although plaintiffs did not rescind until the latter part of 1937, the *uncontradicted* evidence was to the effect that the falsity of the representation was not discovered until October 3, 1937. Furthermore, no point was made by the defendant at the trial that plaintiffs were guilty of laches or unreasonable delay, and no such point is made in the brief submitted by defendant on this appeal. We must assume that plaintiffs did not learn of the falsity of the representation until October 3, 1937. The rescission was only a month later.

As to the doubt cast upon the truth of plaintiffs' testimony that there was an express conversation regarding unpaid taxes, this testimony was not incredible *as a matter of law*, and it was not contradicted by any testimony on the part of the defendant, the complaint having been dismissed at the close of plaintiffs' case. The defendant should at least have been put to its proof.

A few words may be said regarding plaintiffs' claim that defendant specifically represented that there were no assessments against the property. Although there was an outstanding assessment against the property, said assessment had been converted into a ten-installment assessment pursuant to section 1019-a of the Greater New York Charter. As the result of the adoption of this procedure, only one installment became due each year. At the time of the sale of the certificate to plaintiffs all the unpaid installments had been paid. Section 1019-a provides that installments which have not yet become due are not a lien or incumbrance upon the property but only become such when they fall due. Plaintiffs' testimony indicates clearly that what they asked of the defendant and were interested in was whether there were any *arrears* of assessments. As there were no *arrears* of assessments there was no misrepresentation in regard to assessments.

In our opinion plaintiffs established *prima facie* (1) that they expressly made it a condition of their purchase that the certificate be free of tax arrears, and (2) that the certificate which they received did not conform to this condition. It was, therefore, error for the trial court, by dismissing the complaint at the close of plaintiffs' case, to hold, in effect, that as a *matter of law* either there was no misrepresentation or else it was immaterial.

Judgment reversed and new trial ordered, with ten dollars costs to appellant to abide the event.

HAMMER, J., concurs; NOONAN, J., dissents.